UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
:
:
UNITED STATES OF AMERICA,  :
:
  - v. -  :  S1 10 Cr. 56 (RJS)
:
JASON GOLDFARB,  :
:
         Defendant.  :
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


## GOVERNMENT'S SENTENCING MEMORANDUM


                                            PREET BHARARA
                                            United States Attorney for the Southern
                                            District of New York

ANDREW L. FISH
RICHARD C. TARLOWE
REED M. BRODSKY
Assistant United States Attorneys

     - Of Counsel -

The Government respectfully submits this memorandum in connection with the sentencing of Jason Goldfarb. For the reasons that follow, Goldfarb should be sentenced within the Guidelines range of 37 to 46 months' imprisonment.

I.      **Applicable Law**

Although the Sentencing Guidelines are no longer mandatory, they nevertheless continue to play a critical role in trying to achieve the "basic aim" that Congress tried to meet in enacting the Sentencing Reform Act, namely, "ensuring similar sentences for those who have committed similar crimes in similar ways." *United States* v. *Booker*, 543 U.S. 220, 252 (2005); *see United States* v. *Crosby*, 397 F.3d 103, 113 (2d Cir. 2005) ("[I]t is important to bear in mind that *Booker/Fanfan* and section 3553(a) do more than render the Guidelines a body of casual advice, to be consulted or overlooked at the whim of a sentencing judge."). Indeed, the applicable Sentencing Guidelines range "will be a benchmark or a point of reference or departure" when considering a particular sentence to impose. *United States* v. *Rubenstein*, 403 F.3d 93, 98-99 (2d Cir. 2005).

In furtherance of that goal, a sentencing court is required to "consider the Guidelines 'sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant,' the pertinent Sentencing Commission policy statements, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to victims" *United States* v. *Booker*, 543 U.S. at 260 (citations omitted); *see also id.* at 264 ("The district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing.").

Apart from the Sentencing Guidelines, as the Court is well aware, the other factors set forth in Section 3553(a) must be considered. Section 3553(a) directs the Court to impose a

sentence "sufficient, but not greater than necessary" to comply with the purposes set forth in paragraph two. That sub-paragraph sets forth the purposes as:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

Section 3553(a) further directs the Court—in determining the particular sentence to impose—to consider: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the statutory purposes noted above; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range as set forth in the Sentencing Guidelines; (5) the Sentencing Guidelines policy statements; (6) the need to avoid unwarranted sentencing disparities; and (7) the need to provide restitution to any victims of the offense. *See* 18 U.S.C. § 3553(a). The Court "shall impose a sentence sufficient, but not greater than necessary, to comply" with these purposes. *Id*.

In light of *Booker*, the Second Circuit has instructed that district courts should engage in a three-step sentencing procedure. *See United States* v. *Crosby*, 397 F.3d at 103. First, the Court must determine the applicable Sentencing Guidelines range, and in so doing, "the sentencing judge will be entitled to find all of the facts that the Guidelines make relevant to the determination of a Guidelines sentence and all of the facts relevant to the determination of a non-Guidelines sentence." *Crosby*, 397 F.3d at 112. Second, the Court must consider whether a departure from that Guidelines range is appropriate. *Id*. Third, the Court must consider the

Guidelines range, "along with all of the factors listed in section 3553(a)," and determine the sentence to impose. *Id.* at 113.

**II.     Analysis**

For the reasons discussed below, Goldfarb's illegal conduct, weighed in view of the factors set forth in Section 3553(a), warrants a sentence within the Guidelines range of 37 to 46 months' imprisonment.

   **A.     The Offense Conduct**

Goldfarb played a critical role in an insider trading scheme in which two Ropes & Gray attorneys misappropriated material, nonpublic information from their law firm in exchange for cash bribes. Goldfarb was an intermediary between Zvi Goffer (the stock trader who used and further disseminated the inside information) and the two Ropes & Gray attorneys (Arthur Cutillo and Brien Santarlas). Contrary to the contention of Goldfarb's counsel, Goldfarb did not act simply as a "go between" who was paid for "transporting" information. (*See* PSR ¶ 39). To the contrary, Goldfarb kept the scheme running by constantly prodding Cutillo and Santarlas to obtain new inside information. For example, in an intercepted telephone conversation with Zvi Goffer, Goldfarb said he obtained inside information by constantly "press[ing]" Cutillo and Santarlas and "drilling" into them the importance of listening for potentially valuable inside information. (*See* Exh. A (Transcript of February 1, 2008 telephone conversation) at 2). Indeed, Santarlas testified that Goldfarb instructed Cutillo and Santarlas to keep their "ears open" for information regarding "new deals or mergers." (Tr. 449).[1] Goldfarb's role was so important that

---

[1] "Tr." refers to the trial transcript in *United States* v. *Goffer*, S1 10 Cr. 56 (RJS); "GX" refers to Government exhibits from that trial.

3

Goffer paid Goldfarb the same amount in cash bribes as he paid to the two Ropes & Gray attorneys.

Goldfarb's crimes were serious. Insider trading is a pernicious offense. It victimizes all investors in the marketplace. It undermines public confidence in the integrity of our capital markets. When insiders provide material, nonpublic information to traders like Zvi Goffer, then ordinary investors lose confidence in the fairness of the stock market. That has harmful consequences for the national and global economy.

Goldfarb's crimes were particularly egregious because of his status as an attorney. While working as an attorney obligated to protect client confidences, Goldfarb engaged in a scheme to misappropriate information protected by the attorney-client privilege in order to enrich himself. Goldfarb's statement that his crimes had "nothing to do with his job" (PSR ¶ 42) presents a cramped view of an attorney's obligations. As a member of the bar, Goldfarb had an obligation to report other attorneys' violations of their ethical obligations. *See* N.Y. Rules of Professional Conduct, Rule 8.3. Rather than reporting attorney misconduct, Goldfarb encouraged, facilitated, and participated in the disclosure of attorney-client privileged information as part of an insider trading scheme. Goldfarb's actions undermined the legal system and those who serve it.

Goldfarb's crimes did not relate to a one-time event or a single moment of poor judgment. Instead, between approximately July 2007 and approximately June 2008, Goldfarb repeatedly pressed Cutillo and Santarlas for inside information, repeatedly received inside information from them, and repeatedly disseminated the inside information to Zvi Goffer. In addition, Goldfarb obtained from Goffer and then supplied to Cutillo and Santarlas multiple sets of prepaid cellular telephones so they could communicate while evading detection by law

enforcement.

Goldfarb's suggestion that he engaged in an insider trading scheme to provide financial support to his parents is belied by the intercepted telephone calls. At the trial of Goldfarb's co-defendants, the Court heard numerous intercepted conversations between Goldfarb and Goffer which reveal that Goldfarb was an eager and enthusiastic participant in the insider trading scheme. (*See*, *e.g.*, GX 121-T, at 4 (attached as Exhibit B) ("That['s] awesome, dude we're going to make a fortune this year, man."); GX 125-T, at 11 (attached as Exhibit C) ("[Cutillo and Santarlas are] ready to replenish and that's what we're going to do."). In addition, in another intercepted conversation, Goldfarb said that he expected to make "millions" through the insider trading scheme and be "set for life." (Exh. A at 3). Thus, the intercepted telephone conversations reveal that Goldfarb joined the insider trading scheme to enrich himself.

By any measure—the seriousness and pervasiveness of the illegal conduct and the impact of the offenses on Ropes & Gray and its clients—Goldfarb's misconduct stands out as egregious. The nature and circumstances of Goldfarb's offenses warrant a sentence within the Sentencing Guidelines range.

### B. Goldfarb's Offer to Cooperate

Following his arrest, Goldfarb expressed a desire to cooperate. The Government advised his counsel that Goldfarb could not provide substantial assistance and, therefore, would not receive a cooperation agreement. After repeated requests from defense counsel, the Government agreed to meet with Goldfarb pursuant to a proffer agreement. At the beginning of the meeting, the Government advised Goldfarb that it was highly unlikely that his information would provide substantial assistance or result in a cooperation agreement. Following the proffer sessions, the

Government advised Goldfarb that he would not receive a cooperation agreement.

In a letter to the Probation Department, Goldfarb's counsel noted that a document that Goldfarb provided to the Government during a proffer was designated as a potential Government trial exhibit. The Court had required the Government to designate trial exhibits a month before trial, and the Government designated this document in an abundance of caution. The document was not offered in evidence at trial. It should be noted that Goldfarb advised the Government during a proffer session that he had a safe deposit box at a particular financial institution. The Government subsequently obtained records relating to that safe deposit box and offered them in evidence at trial as Government Exhibit 26.

C.   **Application of Sentencing Guidelines**

Although no longer binding upon the Court, the United States Sentencing Guidelines represent the considered judgment of the United States Sentencing Commission, a body of experts drawn from all areas of the legal profession, specifically created to determine the appropriate sentence in particular types of cases. As Judge Lynch has recognized, it is important for "rational judges [to] seek guidance . . . in the collective judgment of their peers and of institutions that have sought to develop a logical structure for guiding their discretion, such as the Sentencing Commission." *See United States* v. *Emmenegger*, 329 F. Supp. 2d 416, 426 (S.D.N.Y. 2004); *see also id*. (acknowledging the significance of the Guidelines "as an advisory system of principles that both (1) sets a general level of severity of sentences deemed appropriate by a judicious body of politically-responsible experts, and (2) creates a methodology and enumerates factors to be applied to assess the seriousness of criminal conduct and the severity of an offender's criminal record"). Both the *Booker* and *Crosby* courts stressed the continuing

significance of the Guidelines under the new sentencing framework.

Goldfarb's Guidelines offense level was determined based on the trading profits of Zvi Goffer and Emanuel Goffer. The evidence established that Goldfarb knew that Zvi Goffer was sharing the inside information with Emanuel Goffer. (*See* GX 151-T at 2). Accordingly the Goffer brothers' profits were foreseeable to Goldfarb.

### D.     The Need To Afford Adequate Deterrence

One of the factors the Court must consider in imposing sentence under Section 3553(a) is the need for the sentence to "afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a)(2)(B). A significant term of imprisonment is necessary to achieve the goals of general deterrence in this case.

Insider trading is difficult to detect and prosecute. As a result, when law enforcement uncovers an insider trading scheme, it is important to send a clear and powerful message that those committing this offense will be prosecuted and sent to prison for a significant length of time. *See United States* v. *Koulouroudis*, 09 CR 440 (PGG), Sentencing Transcript dated April 9, 2010, at 27-28 (Gardephe, J.) ("Given the enormous financial awards as a result of this kind fraud and the difficulties of detecting it, it is my belief that a term of imprisonment is often appropriate in this type of case to serve certain objectives and general deterrence and respect for the law."); *United States* v. *Heffernan*, 43 F.3d 1144, 1149 (7th Cir. 1994) (Posner, J.) ("Considerations of (general) deterrence argue for punishing more heavily those offenses that either are lucrative or are difficult to detect and punish, since both attributes go to increase the expected benefits of a crime and hence the punishment required to deter it."). A Guidelines sentence is appropriate to deter others from committing crimes that undermine the public's

confidence in the capital markets and deprive all investors of a fair system.

### III.    The Court Should Order Forfeiture

The Government may obtain a money judgment against the defendant to recover the amount of the crime proceeds. *See*, *e.g.*, *United States* v. *Kalish*, 626 F.3d 165, 169 (2d Cir. 2010); *United States* v. *Baker*, 227 F.3d 955, 970 (7th Cir. 2000) (a forfeiture order may include a money judgment for the amount of money involved in an offense; the money judgment acts as a lien against the defendant personally for the duration of his prison term and beyond); Fed. R. Crim. P. 32.2. The amount of the money judgment should be equal to the gross proceeds of the defendant's crime, without deducting expenses. *See*, *e.g.*, *United States* v. *Uddin*, 551 F.3d 176, 181 (2d Cir. 2009) (defendant convicted of food stamp fraud was properly sentenced to a forfeiture money judgment equal to the entire loss amount paid by the government, without subtracting the amount of cash that the defendant shared with the food stamp beneficiary; "Because the statute [18 U.S.C. § 981(a)(2)(A)] directs that 'proceeds' are not limited to net profits from the crime, and because any proceeds directly traceable to food stamp fraud are subject to forfeiture, the district court did not commit error by entering a forfeiture order equal to the entire loss amount."). A money judgment is appropriate even if the defendant did not retain the proceeds of his crime or does not have the resources to pay the money judgment. *See*, *e.g.*, *United States* v. *Kalish*, 626 F.3d at 169. In cases involving continuing schemes and conspiracies, the amount involved in the entire scheme is forfeitable. *See*, *e.g.*, *United States* v. *Royer*, 549 F.3d 886, 904 (2d Cir. 2008) (holding that defendant in insider trading case was properly ordered to forfeit all profits earned by defendant's tippees).

Accordingly, Goldfarb should be ordered to forfeit the gain from the offenses that was

reasonably foreseeable to him, which was approximately $1,103,131 in United States currency.

## CONCLUSION

For the reasons explained above, Goldfarb should be sentenced to a term of imprisonment within the Guidelines range of 37 to 46 months' imprisonment.

Dated:  New York, New York
        August 12, 2011

                                        Respectfully submitted,

                                        PREET BHARARA
                                        United States Attorney
                                        Southern District of New York


By:      /s/                        
        Andrew L. Fish
        Richard C. Tarlowe
        Reed M. Brodsky
        Assistant United States Attorneys
        (212) 637-2598/2330/2492