UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11/23/2015

JASON GOLDFARB,

                Petitioner,

-v-

UNITED STATES OF AMERICA,

                Respondent.

No. 15-cv-959 (RJS)
10-cr-56-3 (RJS)
OPINION & ORDER

RICHARD J. SULLIVAN, District Judge:

Petitioner brings this *pro se* action for the issuance of a writ of error *coram nobis* pursuant to 28 U.S.C. § 1651(a), requesting that the Court vacate the fine imposed on Petitioner at sentencing in his prior criminal case. (15-cv-959 (RJS), Doc. No. 1.) Specifically, Petitioner argues that he should be relieved of the burden of the $32,500 fine imposed by the Court because "he is the sole defendant in the entire criminal case who was sentenced to a fine in addition to forfeiture" and because of his limited financial resources as a "recently married man" who "was disbarred due to pleading guilty in this matter." (*Id.* at 2, 4.) For the reasons set forth below, Petitioner's motion is, respectfully, denied.

I. BACKGROUND

Petitioner's underlying criminal conviction arose from an insider trading scheme in which two attorneys at the law firm of Ropes & Gray misappropriated material, non-public information

from firm clients, which they then exchanged for cash payments.[1] (10-cr-56, Doc. No. 1.) Petitioner served as the intermediary between the Ropes & Gray attorneys, Brien Santarlas ("Santarlas") and Arthur Cutillo ("Cutillo"), and the stock trader who ultimately traded on that inside information, Zvi Goffer. (Plea Tr. at 32:1–8.) Zvi Goffer, in turn, shared the inside information with others, including Michael Kimelman, Craig Drimal, David Plate, and Emanuel Goffer. (*See* Opp'n at 2.) For his part, Petitioner played a critical role in establishing the insider trading scheme for which he and others were later convicted. Petitioner recruited his former roommate Cutillo to join the conspiracy, pressed Cutillo and Santarlas for inside information, and conveyed the information he received from them to Zvi Goffer. (Plea Tr. at 31:16–24, 33:1–3; Doc. No. 235, Ex A.) He even obtained "burner" phones for Cutillo and Santarlas to use in an effort to hide the insider trading operation from law enforcement. (Sent. Tr. at 82:19–22.) In return for Petitioner's efforts, he received payments equal to those received by Cutillo and Santarlas. (Sent. Tr. at 82:4–6.)

On November 4, 2009, the government charged Petitioner with insider trading in a criminal complaint (Doc. No. 1); he was later indicted, along with several co-conspirators, on January 21, 2010 (Doc. No. 43). Petitioner plead guilty on April 21, 2011 to Counts One and Three of a later-filed superseding indictment, which charged him with conspiracy to commit securities fraud in violation of 18 U.S.C. § 371, and securities fraud in violation of 15 U.S.C. §§ 78j(b) & 78ff, 17 C.F.R. § 240.10b-5, and 18 U.S.C. § 2. (Doc. No. 167 (superseding indictment); Minute Entry for

---

[1] Unless otherwise indicated, citations to docketed items refer to those materials that appear in Petitioner's criminal case, *United States v. Goffer, et al.*, No. 10-cr-56 (RJS). However, the Court also cites to materials that appear in Petitioner's civil case, *Jason Goldfarb v. United States*, No. 15-cv-959 (RJS), including the Petition (No. 15-cv-959 (RJS), Doc. No. 1 ("Pet.")), the government's opposition (No. 15-cv-959 (RJS), Doc. No. 4 ("Opp'n")), Petitioner's reply (No. 15-cv-959 (RJS), Doc. No. 7 ("Reply")), and all exhibits and declarations attached thereto. The Court also relies on the transcripts from the following proceedings in the criminal case: the April 21, 2011 plea conference ("Plea Tr."), and the August 19, 2011 sentencing of Petitioner ("Sent.Tr.").

Proceedings dated April 21, 2011.) During Petitioner's plea conference, the Court reviewed the maximum penalties Petitioner faced for the crimes to which he intended to plead guilty and noted that Count One included "a maximum fine of the greatest of either $250,000 or twice the gross pecuniary or financial gain derived from the offense or twice the gross pecuniary or financial loss to persons other than [Petitioner] that resulted from the offence," and Count Three carried "a maximum fine of either $5 million or again twice the gross gain or twice the gross loss that resulted from the offense." (Plea Tr. at 16:16–17:17.) The Court further explained that any fine imposed by the Court would be independent of any forfeiture that the Court might impose. (*Id.* at 17:1–2, 15–16 (noting that, in addition to the fine previously discussed, the Court could "also order [Petitioner] to forfeit any and all proceeds" derived from the offences).) Petitioner responded, "I understand." (*Id.* at 17:18.) These potential penalties, including the possible imposition of a substantial fine, were repeated in the Presentence Report provided to Petitioner and his counsel in advance of sentencing, and Petitioner's counsel raised no objection to the Presentence Report or its contents at the sentencing proceeding. (Sent. Tr. at 4:18–5–12.) During the sentencing proceeding, the Court acknowledged the support of Petitioner's family and friends, as evidenced by the many letters and statements made to the Court on his behalf. (*Id.* at 76:8–23.) Nonetheless, the Court explained that the offense conduct in this matter was extremely serious, occurred over a long period of time, and was of a character that must be punished in order to deter Petitioner and others from engaging in similar conduct in the future. (*Id.* at 82:6–83:14; 85:4–86:3.) Accordingly, the Court found that a sentence of thirty-six months' imprisonment, a three-year term of supervised release, a $200 special assessment, approximately $1.13 million in forfeiture, and a fine of $32,500 was sufficient but not more than necessary to accomplish the goals of sentencing in that matter. (Doc. No. 238.) Petitioner has completed his custodial sentence and is currently

serving his term of supervised release. By all accounts, Petitioner is doing well on supervised release. He is gainfully employed, is recently married, and has demonstrated a healthy and sincere sense of remorse for his criminal conduct, which constituted a serious, but relatively short, lapse in judgment in an otherwise productive and successful career and life. He has further executed a settlement with the government regarding his forfeiture obligations. (Opp'n at 1.) Also, since March 24, 2014, Petitioner has made $100 monthly payments toward his fine. (*Id.* at 8; *see also* Pet. at 1–2.) To date, Petitioner has paid a total of $2,000.

Petitioner commenced this action on February 6, 2015. (Pet.) On February 25, 2015, the Court ordered the government to answer the Petition (15-cv-959, Doc. No. 3), and the matter was fully briefed on May 27, 2015 (15-cv-959, Doc. No. 7).

## II. LEGAL STANDARD

A petition for a writ of error *coram nobis* "is not a substitute for appeal, and relief under the writ is strictly limited to those cases in which errors of the most fundamental character have rendered the proceeding itself irregular and invalid." *Foont v. United States*, 93 F.3d 76, 78 (2d Cir. 1996) (internal quotation marks and alternations omitted). Accordingly, a district court may issue the writ only where "extraordinary circumstances are present." *Nicks v. United States*, 955 F.2d 161, 167 (2d Cir. 1992). On the district court's review, the proceedings leading to a petitioner's conviction are presumed to be correct, and "the burden rests on the accused to show otherwise." *United States v. Morgan*, 346 U.S. 502, 512 (1954). To meet this burden, a petition must demonstrate that "1) there are circumstances compelling such action to achieve justice, 2) sound reasons exist for [petitioner's] failure to seek appropriate earlier relief, and 3) the petitioner continues to suffer legal consequences from his conviction that may be remedied by granting of the writ." *Fleming v. United States*, 146 F.3d 88, 90 (2d Cir. 1998) (quoting *Foont*, 93 F.3d at 78).

4

Additionally, a petitioner may not delay in seeking his or her requested relief. While "the time for filing a petition is not subject to a specific statute of limitations . . . , an error of constitutional dimension at the time of plea or sentence renders a conviction voidable, not void, and *coram nobis* relief may be barred by the passage of time." *Foont*, 93 F.3d at 79. A district court "must decide the issue [of delay] in light of the circumstances of the individual case." *Id.* "The critical inquiry" in this analysis, "is whether the petitioner is able to show justifiable reasons for the delay." *Id.* at 80.

Finally, a district court must review a *pro se* petition for collateral relief "with a lenient eye, allowing borderline cases to proceed." *Williams v. Kullman*, 722 F.2d 1048, 1050 (2d Cir. 1983). However, where "a petition fails even vaguely to suggest an essential element of a claim for relief, the district court is not required to overlook the deficiency." *Fleming*, 146 F.3d at 90.

III. DISCUSSION

Petitioner requests a writ of error *coram nobis* vacating the judgment in his prior criminal matter on the grounds that the fine imposed at sentencing may have been a mistake in the first instance, and in any event, is inappropriate in light of Petitioner's current circumstances. (Pet. at 3.) Specifically, Petitioner argues – in a filing made three-and-a-half years after his sentencing – that the $32,500 fine imposed by the Court is unjust because (1) it was assessed on Petitioner alone, and not his co-defendants, creating a disparity between their sentences and his own, and (2) it constitutes a financial hardship in light of his current inability to practice law, recent marriage, and profound contrition for his crime. (Pet. at 2, 4–7.)

Although the Court is sympathetic to Petitioner's plight, the Court finds that Petitioner's request must be denied for inexcusable delay in bringing his claims to the attention of the Court. "In deciding the timeliness of *coram nobis*, [t]he critical inquiry is whether the petitioner knew or

should have known earlier of facts underlying the claim for *coram nobis* relief." *Nangia v. United States*, No. 11-cv-6056 (RMB), 2012 WL 4513477, at *3 (S.D.N.Y. Oct. 2, 2010). Here, Petitioner became aware on August 19, 2011, the day of his sentencing, that he could face a fine in this matter. Indeed, the Court twice informed Petitioner that he would be subject to a $32,500 fine during the sentencing hearing, and the fine also appeared in the Judgment entered on the public docket and served upon Petitioner shortly following his sentencing. (Doc. No. 238; Opp'n at 11.) Moreover, Petitioner was aware at the time of his sentencing that Arthur Cutillo, a co-defendant whom Petitioner now argues is the most similarly situated to himself (Pet. at 4), had been sentenced several months earlier without the condition of a fine (Doc. No. 220 (Cutillo Judgment)). Indeed, several individuals discussed the prior Cutillo sentencing during Petitioner's own sentencing proceedings. (Sent. Tr. at 46:23–47:5 (Joseph Romano), 51:6–11 (Dr. Kirwin); *see also id.* at 86:7–9 (the Court).) Furthermore, by the end of 2011, all of Petitioner's co-defendants had been sentenced by the Court, and the Judgments in each matter – which clearly specified whether a fine had been imposed – were publicly available. (*See* Doc. Nos. 261 (Drimal Judgment), 271 (Zvi Goffer Judgment), 283 (Emanuel Goffer Judgment), 288 (Kimelman Judgment), 297 (Plate Judgment).) That Petitioner did not consider the *significance* of his fine until he was released from custody and his probation officer asked him to begin making payments is irrelevant to the legal inquiry. Accordingly, Petitioner's delay of more than three-and-a-half years is not justified, and the extraordinary remedy of a writ of *coram nobis* must be denied. *See Nordahl v. United States*, 435 Fed. Appx. 35, 36 (2d Cir. 2011) (finding that a three-and-a-half-year delay was unjustifiable); *see also Mastrogiacomo v. United States*, No. 90-cr-565 (KTD), 2011 WL 799741, at *2 (S.D.N.Y. July 16, 2001) (holding that a delay of three years precluded *coram nobis* relief).

IV. CONCLUSION

For the reasons stated above, the Court must deny the Petition. Nonetheless, the Court emphasizes that it is well aware of the positive steps Petitioner has taken since his release from custody, and reiterates the point made at sentencing that Petitioner is a "good, decent person . . . who has a great future in from of [him]." (Sent. Tr. 93:11–16.) There is much more to Petitioner than this one offense, serious as it was, and the Court is confident that Petitioner will continue to be a productive and valued member of society. The Court further notes that Petitioner's arguments regarding the financial hardship imposed as a result of the Court's fine may present a basis for a motion under 18 U.S.C. § 3572(d)(3) seeking modification of Petitioner's payment schedule. Additionally, if the government were to file a petition pursuant to 18 U.S.C. § 3573, the Court would be free to consider whether to deem Defendant's previous payments of $2,000 as satisfying his financial obligation in full and to remit the unpaid portion of Plaintiff's fine. Should Petitioner or the government wish to file such motions, they should do so in Defendant's prior criminal case at docket number 10-cr-56 (RJS). Nevertheless, with respect to the present petition, the clerk of the court is respectfully directed to close this case.

SO ORDERED.

Dated:   November 23, 2015
         New York, New York

                                           RICHARD J. SULLIVAN
                                           UNITED STATES DISTRICT JUDGE